UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**LISA J.,**[1]

       **Plaintiff,**

                                            **Case No. 2:21-cv-11413**
v.                                  **Magistrate Judge Norah McCann King**

**MARTIN O'MALLEY,**
**Commissioner of Social Security,**

       **Defendant.**

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Lisa J. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court the Court reverses the Commissioner's decision and remands the matter for further proceedings.

**I.**     **PROCEDURAL HISTORY**

On April 20, 2019, Plaintiff filed her application for benefits, alleging that she has been disabled since May 12, 2018. R. 78, 95, 159–62. The application was denied initially and upon

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.
[2] Martin O'Malley, the current Commissioner of Social Security, is substituted as Defendant in his official capacity. *See* Fed. R. Civ. P. 25(d).

1

reconsideration. R. 101–05, 107–09. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). R. 111–12. ALJ Lori Romeo held a hearing on June 4, 2020, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 30–64. In a decision dated September 1, 2020, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from May 12, 2018, Plaintiff's alleged disability onset date, through the date of that decision. R. 15–25. That decision became final when the Appeals Council declined review on April 19, 2021. R. 1–7. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On June 7, 2024, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 20.[3] On June 12, 2024, the case was reassigned to the undersigned. ECF No. 21. The matter is ripe for disposition.

## II.     LEGAL STANDARD

### A.     Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. § 405(g). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this

---

[3] The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

2

> Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting

3

*Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

4

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

**B.    Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the

impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III. ALJ DECISION AND APPELLATE ISSUES

Plaintiff met the insured status requirements of the Social Security Act through December 31, 2023. R. 17. She was 47 years old on May 12, 2018, her alleged disability onset date. R. 24. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between that date and the date of the decision. R. 17.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: history of diffuse polyneuropathy; cervical degenerative changes and multilevel disc herniation; lumbar disc bulges; obesity; diverticulitis (beginning in or around October 2019); depression; and marijuana use. *Id*.  The ALJ also found that the following impairments were not severe: history of gastrointestinal bleed; anemia stabilized with hemoglobin and treated with iron supplements; hypokalemia; vitamin D and vitamin B deficiencies treated with medications; and kidney failure caused by dehydration. R. 18.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 18–20.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various additional limitations. R. 20–24. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a retail salesperson, ambulance driver, and activity director. R. 24.

At step five and relying on the testimony of the vocational expert, the ALJ found that a significant number of light exertional jobs—*e.g.*, jobs as a marking clerk, a routing clerk, and a photocopy machine operator—existed in the national economy and could be performed by

Plaintiff. R. 24–25. The ALJ also found that a significant number of sedentary jobs—*e.g.*, jobs as a document preparer, a call out operator, and an information clerk—existed in the national economy and could also be performed by Plaintiff. *Id*. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from May 12, 2018, her alleged disability onset date, through the date of the decision. R. 25.

Plaintiff disagrees with the ALJ's findings at steps two and four and argues that the Commissioner failed to consider new and material evidence. Plaintiff asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Brief Pursuant to Local Civil Rule 9.1,* ECF No. 13; *Plaintiff's Reply Brief*, ECF No. 19. The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 18.

IV.     **SUMMARY OF RELEVANT MEDICAL EVIDENCE**

On April 3, 2019, Ravinder Tikoo, M.D., Plaintiff's treating physician, completed an eight-page, check-the-box and fill-in-the-blank form entitled, "Multiple Impairment Questionnaire." R. 653–60. Dr. Tikoo indicated that he had been treating Plaintiff every two weeks, beginning February 1, 2011, and most recently on March 27, 2019. R. 653. Dr. Tikoo diagnosed radiculopathy, cervical region (M54.12); radiculopathy, lumbosacral spine (M54.17); hereditary and idiopathic neuropathy, unspecified (G60.9); and joint derangement, unspecified (M24.9). *Id*. Plaintiff's prognosis was "reserved." *Id*. Asked to identify the clinical findings that demonstrated and/or supported these diagnoses, Dr. Tikoo referred to an August 2018 MRI of

the cervical spine that showed disc herniations at multiple levels, with encroachment on the ventral margin of the cord and impingement of the thecal sac; an August 2018 MRI of the lumbar spine that revealed a disc bulge at L4-5 with indentation of the thecal sac; EMG/NCV testing in February 2019 that revealed evidence of bilateral tibial nerve motor-sensory neuropathy; and EMG/NCV testing in March 2017 that revealed bilateral median sensory motor neuropathy. *Id*. Dr. Tikoo identified Plaintiff's primary symptoms as headaches, neck pain, lower back pain, and paresthesia of the arms and legs. R. 654. According to Dr. Tikoo, Plaintiff's symptoms and functional limitations were reasonably consistent with the physical and/or emotional impairments described in the doctor's evaluation. *Id*. Dr. Tikoo also noted constant and severe pain in the head, neck, and lower back, precipitated by activity. R. 654-55. Dr. Tikoo rated Plaintiff's pain as 10 out of 10 and her fatigue as 7 out of 10. R. 655. Plaintiff's pain was not completely relieved by medication without unacceptable side effects. *Id*. Dr. Tikoo opined that Plaintiff could sit, and could stand/walk, for up to 1 hour in an eight-hour day. *Id*. Plaintiff should not sit continuously in a work setting and would need to get up and move around for 15 to 20 minutes every 15 minutes R. 655–56. t Plaintiff could occasionally lift and carry up to 5 pounds. R. 656. The doctor also opined that Plaintiff had significant limitations in reaching, handling, fingering, and lifting, explaining that Plaintiff "gets cramps in the arm & legs[.] She is unable to bend, lift, push, or pull[.]" *Id*. Dr. Tikoo specifically opined that Plaintiff was moderately limited—meaning significantly but not completely limited—in her ability to grasp, turn, and twist objects; was markedly limited—meaning essentially precluded—in her ability to use her fingers/hands for manipulations and in her ability to use her arms for reaching, including overhead reaching. R. 656–57. Dr. Tikoo indicated that he had adjusted Plaintiff's medications in an attempt to lower her symptomatology or relative side effects and had also treated her with

9

physical therapy. R. 657. According to Dr. Tikoo, Plaintiff's symptoms would likely increase if she were placed in a competitive work environment and that her condition interferes with her ability to keep her neck in a constant position; Plaintiff could not perform a full-time competitive job that requires activity on a sustained basis. R. 657–58. Moreover, Plaintiff's experience of pain, fatigue, or other symptoms are severe enough to constantly interfere with her attention and concentration. R. 658. According to Dr. Tikoo, Plaintiff's impairments are ongoing and were expected to last for at least 12 months, and her chronic depression contributed to the severity of her symptoms and functional limitations. *Id*. Plaintiff was incapable of even low-stress work. *Id*. Plaintiff's impairments were likely to produce "good days" and "bad days," causing her to likely be absent from work more than three times a month. R. 658–59. Furthermore, Plaintiff would need ready access to a restroom and should avoid wetness, noise, fumes, gasses, temperature extremes, humidity, dust, and heights, as well as pushing, pulling, kneeling, bending, or stooping. R. 659.  Dr. Tikoo related Plaintiff's symptoms and limitations back to March 27, 2019. *Id*.

**V.    DISCUSSION**

Plaintiff argues, *inter alia*, that the ALJ erred in evaluating Dr. Tikoo's opinion, resulting in a flawed RFC. *Plaintiff's Brief*, ECF No. 13, pp. 20–27; *Plaintiff's Reply Brief*, ECF No. 18, pp. 13–16. For the reasons that follow, this Court agrees.

An ALJ must evaluate all record evidence in making a disability determination. *Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704. The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests," sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision and the evidence that the ALJ rejected,

and explain why the ALJ accepted some evidence but rejected other evidence. *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

For claims filed after March 27, 2017,[4] the Commissioner's regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1520c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources"). Instead, the Commissioner will consider the following factors when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c).

The applicable regulation emphasizes that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior

---

[4] As previously noted, Plaintiff's claim was filed on April 20, 2019.

administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id*. at § 404.1520c(a). As to the supportability factor, the regulation provides that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. at § 404.1520c(c)(1). As to the consistency factor, the regulation provides that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. at § 404.1520c(c)(2).

The applicable regulation further requires the ALJ to articulate her "consideration of medical opinions and prior administrative medical findings" and articulate in the "determination or decision how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." *Id*. at § 404.1520c(b).

In the case presently before this Court, the ALJ found that Plaintiff had the RFC to perform a limited range of light work:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she occasionally needs to use a cane for balance. The claimant can perform no overhead reaching but she can frequently push, pull and reach in other directions. She can frequently handle finger and feel. The claimant is limited to unskilled, routine tasks and she is not able to work with the public but she can have occasional and casual contact with coworkers.

R. 20. In making this finding, the ALJ found that Dr. Tikoo's opinion was "not persuasive[,]" reasoning as follows:

> On April 3, 2019, Dr. Tikoo opined the claimant could sit for one hour, stand or walk for one hour, and lift no more than five pounds occasionally, along with other

12

> limitations (Ex. 8F). This assessment is not persuasive. Dr. Tikoo's own treatment notes do not support these extreme restrictions, as the claimant showed full strength (Ex. 7F/44-45). In addition, this opinion is not consistent with the claimant's ability to do some activities of daily living (Hearing Testimony) and the opinions of the State agency medical consultants (Exs. 1A and 3A).[5]

R. 23.

Plaintiff challenges this evaluation, arguing, *inter alia*, that Dr. Tikoo's opinion is in fact supported by his treatment of Plaintiff and pointing to the objective findings in this physician's opinion and to the symptoms noted in the doctor's treatment records. *Plaintiff's Brief*, ECF No. 13, pp. 22–24 (citations omitted); *Plaintiff's Reply Brief*, ECF No. 19, pp. 2–3. Plaintiff further argues that the ALJ's consideration of the consistency prong of her evaluation is flawed because the ALJ failed to specify any activities of daily living that are inconsistent with Dr. Tikoo's opinion and because the state agency medical consultants did not have a complete record before them when they issued their opinions. *Plaintiff's Brief*, ECF No. 13, pp. 25–27; *Plaintiff's Reply Brief*, ECF No. 19, pp. 6–7.

For his part, the Commissioner contends that the ALJ properly considered the prongs of supportability and consistency and that substantial evidence supports the ALJ's findings in this regard. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 18, pp. 13–16. However, in

---

[5] The ALJ found the opinions of the state agency medical consultants persuasive, reasoning as follows:

> State agency medical consultants Arthur Pirone, M.D., and Mohammad Rizwan, M.D., found the claimant could perform a restricted range of light exertional work (Exs. 1A and 3A). I find these assessments are persuasive. The consultants supported their opinions with explanation and references to the record. The limitation to light work is consistent with the claimant's reports of ongoing pain but 5/5 strength and no evidence of reduced grip strength or gait disturbance (Exs. 7F/12, 20 and 15F/9).

R. 23.

13

reply, Plaintiff argues that the ALJ improperly offered only her lay opinion when she stated that the record must confirm abnormal muscle strength before Dr. Tikoo's opinion could be accepted; Plaintiff also argues that the Commissioner relied on *post hoc* rationalization in his defense of the ALJ's consideration of Dr. Tikoo's opinion. *Plaintiff's Reply Brief*, ECF No. 19, pp. 2–6.

The Commissioner's arguments are not well taken. In considering the supportability factor, the ALJ concluded that Dr. Tikoo's own treatment notes do not support his opined restrictions because those notes reflected that Plaintiff "showed full strength." R. 23 (citing Ex. 7F/44–45 (R. 619–20)). However, the first of those two cited pages simply reflects a summary of Plaintiff's treatment from May 2011 through July 2013, *i.e.*, years prior to Plaintiff's alleged disability onset date of May 12, 2018, and no evidence of full strength. R. 619. Although the second cited page reflects findings, in March 2019, of normal bulk, tone, and strength, that same treatment note also indicates that Plaintiff suffered from severe back, neck, and hand pain with numbness. R. 620. This evidence supports Dr. Tikoo's statement in his opinion that Plaintiff suffers from, *inter alia*, neck pain, lower back pain, and paresthesia of the arms and legs, R. 654, as well as his opinion that Plaintiff is limited in her ability to engage in repetitive reaching, handling, fingering, or lifting, R. 656–57.

Moreover, the findings of normal strength that were highlighted by the ALJ do not appear to relate to Plaintiff's ability to reach. *See Kichline v. Comm'r of Soc. Sec.*, No. CV 19-183, 2019 WL 2635542, at *1–2 (E.D. Pa. June 26, 2019) ("The [ALJ's] other findings – full strength, intact sensation, normal gait, and full spinal range of motion – are either inaccurate [where there was, *inter alia*, limited range of motion in the claimant's right shoulder and shoulder tenderness] or inapplicable to the alleged shoulder impairment. . . . The ALJ failed to cite substantial evidence to support his rejection of Dr. Black's opinion that Kichline's shoulder impairment

14

limits her reaching."). In other words, the ALJ rejected, at least in part, Dr. Tikoo's opined manipulative limitations for the wrong reason. Notably, an "ALJ still may choose whom to credit but 'cannot reject evidence for no reason *or the wrong reason*.'" *Sutherland v. Comm'r Soc. Sec.*, 785 F. App'x 921, 928 (3d Cir. 2019) (quoting *Morales*, 225 F.3d at 317) (emphasis added); *see also Nazario*, 794 F. App'x at 209–10 ("We have also held that although the government 'may properly accept some parts of the medical evidence and reject other parts,' the government must 'provide some explanation for a rejection of probative evidence which would suggest a contrary disposition.'") (quoting *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994)); *Cotter*, 642 F.2d at 706–07 ("Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, . . . an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.") (internal citation omitted).

      This Court concludes that the ALJ erred in her consideration of Dr. Tikoo's opinion, and cannot conclude that this error was harmless. As previously detailed, Dr. Tikoo opined, *inter alia*, that Plaintiff was markedly limited in her ability to use her arms for reaching. R. 657. Notably, the light and sedentary jobs identified by the vocational expert—and upon which the ALJ ultimately relied—require frequent (*i.e.*, one-third to two-thirds of the time) or occasional (*i.e.*, one-third of the time) reaching. R. 24–25 (stating that Plaintiff could perform the light jobs of marking clerk, routing clerk, photocopy machine operator, and that Plaintiff could perform sedentary jobs of document preparer, call out operator, and information clerk), 57–58, 60–61; *see also* clerk, DICOT 209.587-014[6] (requiring, *inter alia*, frequent reaching, handling, fingering);

---

[6] The vocational expert and the ALJ identify this position as "marking clerk," but the Dictionary of Occupational Titles identifies this position with this DOT number as a credit-card clerk.

15

routing clerk, DICOT 222.587-038 (requiring, *inter alia*, frequent reaching and handling and occasional fingering); photocopy machine operator, DICOT 207.685-014 (requiring, *inter alia*, frequent reaching, handling, fingering); document preparer, DICOT 249.587-018 (requiring, *inter alia*, frequent reaching, handling, fingering); call out operator, DICOT 237.367-014 (requiring, *inter alia*, occasional reaching, handling, fingering); and information clerk, DICOT 237.367-046[7] (requiring, *inter alia*, frequent reaching, handling, fingering). Accordingly, Dr. Tikoo's reaching restriction, if accepted, would preclude all the jobs identified by the ALJ at step five of the sequential evaluation process. *See id*.

This Court therefore concludes that remand of the matter for further consideration is appropriate.[8] Moreover, remand is appropriate even if, upon further examination of Dr. Tikoo's opinion and further consideration of the RFC determination, the ALJ again concludes that Plaintiff is not entitled to benefits. *Cf. Zuschlag v. Comm'r of Soc. Sec. Admin*., No. 18-CV-1949, 2020 WL 5525578, at *8 (D.N.J. Sept. 15, 2020) ("On remand, the ALJ may reach the same conclusion, but it must be based on a proper foundation."); *Jiminez v. Comm'r of Soc. Sec*., No. CV 19-12662, 2020 WL 5105232, at *4 (D.N.J. Aug. 28, 2020) ("Once more, the ALJ did not provide an adequate explanation that would enable meaningful review, and the Court once more cannot determine what role lay speculation played in the ALJ's rejection of this detailed functional assessment from Dr. Marks."); *Cassidy v. Colvin*, No. 2:13-1203, 2014 WL 2041734, at *10 n.3 (W.D. Pa. May 16, 2014) ("Nevertheless, that the ALJ may have misinterpreted or

---

[7] The vocational expert and the ALJ identify this position as an "information clerk," but the Dictionary of Occupational Titles identifies this position with this DOT number as a telephone quotation clerk.

[8] Plaintiff asserts other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further consideration of Dr. Tikoo's opinion and of the RFC determination, the Court does not consider those assertions.

misunderstood Dr. Kaplan's findings with regard to Plaintiff's postural activities does not absolve her of her error. Rather, it highlights the need for an ALJ to fully explain her findings. Otherwise, the district court is left to engage in this sort of speculation about how an ALJ arrived at her decision.").

## VI. CONCLUSION

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  July 25, 2024                             *s/Norah McCann King*
                                            NORAH McCANN KING
                                       UNITED STATES MAGISTRATE JUDGE